2020 IL App (1st) 200560

No. 1-20-0560

Fourth Division
September 30, 2020

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| | ) | |
| *In re* A.S., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| (The People of the State of Illinois, | ) | |
|     Petitioner-Appellee, | ) | No. 18 JA 927 |
| | ) | |
| v. | ) | The Honorable |
| | ) | John Huff, |
| A.W., | ) | Judge Presiding. |
|     Respondent-Appellant). | ) | |
| | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1        The instant appeal arises from the juvenile court's adjudication order making 14-year-old[1]

minor A.S. a ward of the court due to the abuse of his mother, respondent A.W. Respondent

appeals, claiming that the juvenile court erred in finding that A.S. was abused. For the reasons

that follow, we affirm.

¶ 2                                         BACKGROUND

¶ 3        Minor A.S. was born on June 5, 2005, and was 14 years old at the time of the adjudication

hearing. Respondent is A.S.'s mother and is a single mom, and his father is not a party to the

_____

[1]The minor is currently 15 years old.

instant proceedings. On September 18, 2018, the State filed a petition for adjudication of wardship asking for A.S. to be adjudicated a ward of the court; the State also filed a motion for temporary custody on the same day. In the adjudication petition, the State claimed that A.S. was neglected due to an injurious environment under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2016)) and abused with a substantial risk of physical injury under section 2-3(2)(ii) of the Juvenile Court Act (705 ILCS 405/2-3(2)(ii) (West 2016)). The facts underlying both claims were the same. According to the petition, respondent had one prior indicated report illustrating a substantial risk of physical injury, and lived in an environment injurious to the health and welfare of the minor, and had agreed to allow A.S. to stay with his maternal grandmother in February 2018; at that time, respondent refused intact services for mental health and substance abuse issues. The petition alleged that on September 11, 2018, respondent visited the grandmother's home and "yelled, hit, and pushed maternal grandmother to the bed," requiring A.S. to intervene. The petition further alleged that on September 13, 2018, respondent "chased, hit, and knocked maternal grandmother to the ground," and that, after both the September 11 and September 13 incidents, respondent was hospitalized for psychiatric purposes. The petition alleged that respondent had been diagnosed with bipolar disorder and schizophrenia and had a "long history" of becoming violent with the grandmother; the petition also alleged that respondent admitted to drinking alcohol and "using illegal substances." Finally, the petition alleged that on September 16, 2018, respondent stated that she wanted A.S. to reside with her.

¶ 4        On the same day, based on the allegations contained in the petition for adjudication of wardship, the juvenile court found probable cause that A.S. was neglected, abused, and that immediate and urgent necessity existed to support his removal from the home. The court

granted temporary custody of A.S. to the Department of Children and Family Services (DCFS) guardianship administrator.

¶ 5        On February 27, 2020, the parties appeared before the juvenile court for an adjudication hearing. Natalie Richmond, a DCFS investigator, testified that she was assigned the case after a hotline call on September 16, 2018. She spoke with A.S. that day at his grandmother's home, and A.S. told her that he had been living with his grandmother and that respondent "comes and goes" from the home. He had previously been living with respondent but told Richmond that "there were too many people coming in and out" of the home. A.S. also informed Richmond that respondent drank 40-ounce bottles of liquor and became inebriated. A.S. informed Richmond that the prior Tuesday, respondent came to the grandmother's home inebriated and began flailing her arms and arguing with the grandmother, leading to respondent pushing the grandmother onto the bed and requiring A.S. to intervene to break up the altercation; the grandmother called the police as a result of the altercation. When Richmond asked A.S. who he felt safest with, he responded that he felt safest with his grandmother.

¶ 6        Richmond testified that she also spoke with respondent that day over the telephone, and respondent denied touching the grandmother. Respondent informed Richmond that she was at the grandmother's home because the grandmother was permitting respondent to stay there. Respondent admitted to drinking alcohol on occasion but denied becoming inebriated; respondent informed Richmond that alcohol was a "coping mechanism" to help respondent deal with her schizophrenia. Respondent also admitted to occasionally smoking marijuana.

¶ 7        Richmond testified that, after speaking with A.S. and with respondent, she determined that there was a risk to A.S.' safety and took protective custody of him. Richmond based her decision, in part, on the altercation A.S. said he witnessed and respondent's admissions as to

mental health issues, as well as her drinking and drug use. Richmond testified that, before she could ensure the safety of A.S., she needed to know that respondent's mental health was stable and that she could achieve sobriety. Richmond testified that while A.S. was in his grandmother's care, the grandmother did not have legal custody, so there was a risk that respondent could remove A.S. from the grandmother's care.

¶ 8 After Richmond's testimony, the State offered into evidence respondent's medical records and an emergency order of protection entered against respondent on September 17, 2018, which protected A.S. and his grandmother; all of the exhibits were admitted without objection. As one of respondent's claims on appeal concerns the admissibility of the medical records, we discuss some of the statements contained within them. On September 7, 2016, respondent was brought to the emergency room of Jackson Park Hospital by the Chicago Police Department "for fighting with her son," and was noncompliant with her medication. A note from the emergency department stated that respondent was taken to the emergency room "after a report from her mother and son of being violent, threatening, hearing voices and mentioning having a gun." Respondent admitted to drinking and hearing voices and stated that "her medications make her sleepy and she cannot remember the last time she took them."

¶ 9 On July 5, 2017, respondent was brought to the emergency room of Jackson Park Hospital by the Chicago Police Department, accompanied by her mother, for "acting bizarre." According to her mother, respondent had not been taking her medication and complained of hearing voices. Her mother reported finding respondent naked and kneeling on the ground in front of the couch, and she then attempted to leave the house several times without clothes. Respondent remained hospitalized until July 11.

¶ 10 On November 5, 2017, respondent was brought to the emergency room of Jackson Park Hospital by the Chicago Police Department, accompanied by her mother, for "[v]iolent and aggressive behavior," including pushing her mother against a wall; respondent stated that she had been drinking. Progress notes from that visit stated that respondent admitted to throwing a vacuum cleaner after her mother had poured out respondent's liquor; admitted being noncompliant with her medication, stating that it made her " 'paranoid and scared' "; and admitted that she self-medicated with liquor instead.

¶ 11 On November 12, 2017, respondent was brought to the emergency room of Jackson Park Hospital intoxicated by the Chicago Police Department, and medical records described her as "agitated and combative." The progress notes from that visit indicate that respondent's mother requested that respondent be involuntarily committed "for acting aggressive."

¶ 12 On December 5, 2017, respondent was again brought to the emergency room of Jackson Park Hospital by the Chicago Police Department intoxicated. The progress notes from that visit indicate that respondent was brought in for "violent and aggressive behavior," including standing in the middle of the street, screaming, and threatening people; respondent also had a bloody nose and mouth, with abrasions and bruises on her nose and lips, and was reported to be screaming incessantly at the hospital until she was sedated.

¶ 13 On January 23, 2018, respondent was brought to the emergency room of Jackson Park Hospital by the police department for "[v]iolent behavior" after her mother called police due to an altercation between respondent and her mother over A.S.'s sleeping arrangements; respondent's mother reported that respondent was "very violent at home" and "jumped or lunged at mother through glass table." A progress note from that visit indicates that respondent "states that she pushed her mom and that her mom pushed her back."

¶ 14     On July 11, 2018, respondent was brought to the emergency room of Jackson Park Hospital by the Chicago Police Department due to "increase[d] agitation, irritable, pacing, uncooperative, disorganized, threatened to hurt people, meds non compliance."

¶ 15     On September 10, 2018, respondent was brought to the emergency room of Jackson Park Hospital by the Chicago Police Department, accompanied by her mother, for "violent and aggressive behavior at home and medication non-compliant." The progress notes from that visit state that respondent stated that she experienced auditory hallucinations and that she used illicit drugs "from time to time but not now"; that respondent was brought to the emergency room "because she was physically aggressive toward her mother"; and that she remained agitated, aggressive, and uncooperative until she was medicated. Respondent returned to the hospital on September 14, 2018, when she was brought to the emergency room by the Chicago Police Department because she was "violent at home."

¶ 16     After admission of respondent's medical records and order of protection, the State rested. In her case in chief, respondent testified that A.S. had lived with her throughout his life and that they had lived in an apartment for several years until respondent's finances forced her to move in with her mother in April 2017. Respondent denied ever pushing or hitting her mother. Respondent testified that A.S. struggled with his behavior in school, and respondent was involved with the school in trying to resolve the behavior issues. Respondent testified that A.S. was exaggerating his reports and that he had "only seen one incident between me and my mother and that's because my mother kept sending me to the hospital for no reason at all."

¶ 17     Respondent testified that, when she was living with her mother, her mother would threaten to call the hospital any time respondent engaged in conduct that her mother did not like. Respondent testified that she wanted to drink liquor at her mother's home, which her mother

did not allow, so her mother would send her to the hospital any time she observed respondent drinking. Respondent then began drinking at a bar across the street, and her mother would follow her to the bar and attempt to force her to leave. Respondent testified that her mother then began "lying" about respondent's conduct while she was drinking.

¶ 18     In response to questions from the trial court, respondent testified that she had been diagnosed with a "schizoaffective disorder." She testified that she took her medication, but that she "[hadn't] exactly found the right combination" and that sometimes the medicine was too strong. She testified that the doctors wanted her to take three pills a day, but she only took one, which was "not going to just make me completely shut down."

¶ 19     After the parties rested, the trial court found that the State had proven both neglect and abuse by a preponderance of the evidence. The court found Richmond to be "a credible witness" and noted that the medical records indicated that respondent "had been hospitalized a number of times due to violent behavior. She's been brought to the hospital by the Chicago Police Department. She's made some rather bizarre statements while at the hospital and those documents corroborate the statements of the minor, [A.S.], about [respondent's] violence in the home toward her mother."

¶ 20     Accordingly, the juvenile court entered an adjudication order finding A.S. neglected due to an injurious environment under section 2-3(1)(b) of the Juvenile Court Act and abused due to a substantial risk of physical injury under section 2-3(2)(ii) of the Juvenile Court Act because respondent "has [a] history of psychiatric hospitalization, violent behavior, bizarre statements," violence corroborated by A.S.' statements, medical noncompliance, and diagnoses of bipolar disorder, schizophrenia, and alcohol abuse. On the same day, the juvenile court entered a dispositional order finding it in A.S.' best interest to make him a ward of the

court and finding respondent unable for some reason other than financial circumstances alone to care for, protect, train, or discipline A.S. This timely appeal follows.

¶ 21                                                    ANALYSIS

¶ 22        On appeal, respondent challenges only the finding that A.S. was abused; she does not challenge the finding of neglect, nor does she challenge the dispositional order entered by the juvenile court. "A proceeding for adjudication of wardship 'represents a significant intrusion into the sanctity of the family which should not be undertaken lightly.' " *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004) (quoting *In re Harpman*, 134 Ill. App. 3d 393, 396-97 (1985)). It is the State's burden to prove allegations of neglect or abuse by a preponderance of the evidence. *In re A.P.*, 2012 IL 113875, ¶ 17. "In other words, the State must establish that the allegations of neglect [or abuse] are more probably true than not." *In re A.P.*, 2012 IL 113875, ¶ 17. A reviewing court will reverse the juvenile court's determination "only if the factual findings are against the manifest weight of the evidence or if the court abused its discretion by selecting an inappropriate dispositional order." *In re Kamesha J.*, 364 Ill. App. 3d 785, 795 (2006); see also *In re Malik B.-N.*, 2012 IL App (1st) 121706, ¶ 56; *In re J.C.*, 396 Ill. App. 3d 1050, 1060 (2009); *In re Gabriel E.*, 372 Ill. App. 3d 817, 828 (2007). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re Arthur H.*, 212 Ill. 2d at 464 (citing *In re Edward T.*, 343 Ill. App. 3d 778, 794 (2003)). "Because a trial court is in a superior position to assess the credibility of witnesses and weigh the evidence, a reviewing court will not overturn the trial court's findings merely because the reviewing court may have reached a different decision." *In re April C.*, 326 Ill. App. 3d 245, 257 (2001) (citing *In re Lakita B.*, 297 Ill. App. 3d 985, 994 (1998)). "Ultimately, there is a 'strong and compelling presumption in favor of the result reached by the trial court' in child custody cases."

*In re William H.*, 407 Ill. App. 3d 858, 866 (2011) (quoting *Connor v. Velinda C.*, 356 Ill. App. 3d 315, 323 (2005)).

¶ 23        Under section 2-3 of the Juvenile Court Act, an abused minor includes one whose parent or other person responsible for his welfare "creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function." 705 ILCS 405/2-3(2)(ii) (West 2016). In the case at bar, respondent claims that the State failed to prove that A.S. was an abused minor.

¶ 24        Respondent first claims that the juvenile court erred in considering hearsay evidence contained in her medical records. Respondent admits that this error was not raised before the juvenile court and that her medical records were admitted into evidence without objection. "Where a party fails to make an appropriate objection in the court below, he or she has failed to preserve the question for review and the issue is waived." *In re April C.*, 326 Ill. App. 3d 225, 242 (2001) (citing *In re Lakita B.*, 297 Ill. App. 3d at 991). However, respondent asks us to review the issue under the plain-error doctrine, which has been used in child custody proceedings. See, *e.g.*, *In re Chance H.*, 2019 IL App (1st) 180053, ¶ 47. Under the plain-error doctrine, "[a]n appellate court may address a forfeited error affecting substantial rights *** if the evidence is closely balanced or the error results in the denial of a substantial right and thus a fair hearing." *In re Chance H.*, 2019 IL App (1st) 180053, ¶ 47 (citing *In re S.H.*, 2014 IL App (3d) 140500, ¶ 22). However, the first step in a plain-error analysis is determining whether an error occurred at all. *In re Chance H.*, 2019 IL App (1st) 180053, ¶ 48. In the case at bar, we do not find respondent's arguments persuasive and can find no error in the juvenile court's admission of the entirety of respondent's medical records.

¶ 25    The rules of evidence applicable to civil proceedings are applicable to proceedings under the Juvenile Court Act. 705 ILCS 405/2-18(1) (West 2016). In the case at bar, respondent does not dispute that her medical records were generally admissible and also does not dispute that any admissions that she made to medical personnel were also admissible. See 705 ILCS 405/2-18(4)(a) (West 2016) (providing that medical records are admissible in adjudicatory proceedings); *In re Chance H.*, 2019 IL App (1st) 180053, ¶ 49 (statements of a party are admissible as an exception to the hearsay rule); *In re Zariyah A.*, 2017 IL App (1st) 170971, ¶ 93 (statements of a party contained in a properly-admitted document are admissible). Instead, she challenges only the admissibility of statements in the medical records indicating that she was brought to the hospital for violent or aggressive behavior. Respondent contends that such statements constituted hearsay and could not be considered by the juvenile court.

¶ 26    Hearsay is an out-of-court statement made by a declarant that is offered to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Hearsay evidence is generally inadmissible in adjudicatory proceedings, unless an exception applies. *In re Chance H.*, 2019 IL App (1st) 180053, ¶ 49; *In re Zariyah A.*, 2017 IL App (1st) 170971, ¶ 88. Additionally, even if a document is admissible under a hearsay exception, any hearsay contained within that document must also fall within a hearsay exception to be admissible. See *In re Zariyah A.*, 2017 IL App (1st) 170971, ¶ 93.

¶ 27    In the case at bar, we cannot find that the challenged statements were inadmissible. Statements made for purposes of a medical diagnosis or treatment are exceptions to hearsay and include statements "describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Ill. R. Evid. 803(4)(A) (eff. Sept. 28, 2018).

Statements contained in the medical records by respondent's mother indicating the reason that respondent was brought to the emergency room—in this case, due to violent or aggressive behavior—would fall within this category. See Ill. R. Evid. 803(4)(A) (eff. Sept. 28, 2018) (permitting statements describing "past or present symptoms, *** or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment"). Thus, we can find no error in the admission of those statements.

¶ 28 Additionally, even if there were statements that were inadmissible, the statements would be cumulative of other evidence that was properly admitted at the hearing. "[T]he erroneous admission of hearsay evidence is harmless error where it is merely cumulative of other, properly admitted, evidence in the record." *In re Zariyah A.*, 2017 IL App (1st) 170971, ¶ 90 (citing *People v. Johnson*, 199 Ill. App. 3d 577, 583 (1990)); see also *In re Chance H.*, 2019 IL App (1st) 180053, ¶ 53; *In re A.B.*, 308 Ill. App. 3d 227, 237 (1999). In the case at bar, there is ample evidence in the record, including admissions by respondent herself, that respondent engaged in violent behavior such as pushing her mother and throwing a vacuum cleaner, and that respondent displayed agitated and aggressive behavior on multiple occasions while at the hospital. Thus, even if admission of certain statements was error, it would not rise to the level of plain error.

¶ 29 Respondent also claims that, even disregarding any improper consideration of hearsay, the juvenile court's finding of abuse was against the manifest weight of the evidence. As noted, a reviewing court will reverse the juvenile court's determination "only if the factual findings are against the manifest weight of the evidence or if the court abused its discretion by selecting an inappropriate dispositional order." *In re Kamesha J.*, 364 Ill. App. 3d at 795; see also *In re Malik B.-N.*, 2012 IL App (1st) 121706, ¶ 56; *In re J.C.*, 396 Ill. App. 3d at 1060; *In re*

*Gabriel E.*, 372 Ill. App. 3d at 828. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re Arthur H.*, 212 Ill. 2d at 464 (citing *In re Edward T.*, 343 Ill. App. 3d at 794).

¶ 30    Respondent admits that there is sufficient evidence to support the juvenile court's finding of neglect but claims that the juvenile court's abuse finding was against the manifest weight of the evidence because there was no evidence of there being a substantial risk of serious injury or impairment. As noted, an abused minor under the Juvenile Court Act includes one whose parent or other person responsible for his welfare "creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function." 705 ILCS 405/2-3(2)(ii) (West 2016). In the case at bar, the juvenile court found that the State had established abuse due to substantial risk of injury because respondent "has [a] history of psychiatric hospitalization, violent behavior, bizarre statements," violence corroborated by A.S.' statements, medical noncompliance, and diagnoses of bipolar disorder, schizophrenia, and alcohol abuse. We cannot find that the juvenile court's finding was against the manifest weight of the evidence.

¶ 31    The evidence in the record shows that respondent had several mental health issues, for which she was not taking her medicine as prescribed, and which led to symptoms such as auditory hallucinations and hearing voices. Instead, respondent self-medicated herself with liquor, resulting in numerous occasions where respondent displayed aggressive and otherwise dangerous behavior. This behavior included several acts of violence directed at her mother, including respondent's throwing of a vacuum cleaner. This behavior also required A.S. to intervene to break up a physical altercation between respondent and her mother on at least one

12

occasion. Given respondent's issues, plus the fact that there had been several instances of violence in the home in which A.S. was living, at least one of which occurred in A.S.' presence, we cannot find that it was against the manifest weight of the evidence for the trial court to find that A.S. was abused due to a substantial risk of physical injury as defined by the Juvenile Court Act. 705 ILCS 405/2-3(2)(ii) (West 2016).

¶ 32     We find unpersuasive respondent's claim that it was not proven that respondent had hit her mother and knocked her to the ground, as alleged in the petition. Richmond testified that, on September 16, 2018, A.S. informed her that, the prior Tuesday, respondent came to his grandmother's home inebriated and began flailing her arms and arguing with the grandmother, leading to respondent pushing the grandmother onto the bed and requiring A.S. to intervene to break up the altercation. A minor's out-of-court statements relating to allegations of abuse or neglect are admissible at an adjudicatory hearing if the minor is subject to cross-examination or if the occurrence is corroborated by other evidence. *In re An. W.*, 2014 IL App (3d) 130526, ¶ 62; 705 ILCS 405/2-18(4)(c) (West 2016). "[T]o satisfy the corroboration requirement of section 2-18(4)(c), there must be independent evidence that would support a logical and reasonable inference that the act of abuse or neglect described in the hearsay statement occurred." *In re An. W.*, 2014 IL App (3d) 130526, ¶ 63 (citing *In re A.P.*, 179 Ill. 2d 184, 199 (1997)).

¶ 33     In the case at bar, A.S.' statement to Richmond was corroborated by respondent's medical records, which show that on September 10, 2018,[2] respondent was brought to the emergency room of Jackson Park Hospital by the Chicago Police Department, accompanied by her mother,

---

[2] September 10, 2018, was actually the Monday before September 16, not the Tuesday. Respondent's medical records show that she was hospitalized from September 10 through September 12.

for "violent and aggressive behavior at home and medication non-complian[ce]." The progress notes from that visit state, in relevant part, that respondent was brought to the emergency room "because she was physically aggressive toward her mother" and that she remained agitated, aggressive, and uncooperative upon arrival at the emergency room until she was medicated. Accordingly, A.S.'s statements as to respondent's conduct were properly considered by the juvenile court.

¶ 34    We also find unpersuasive respondent's contention that the juvenile court was required to explain the differences between its findings of neglect and abuse. However, respondent provides no support for this requirement. While respondent correctly notes that neglect and abuse are not identical, respondent provides no support for her claim that a finding of abuse describes a greater risk of harm than neglect. Indeed, courts have commonly found that the same allegations can support a finding of both neglect based on an injurious environment and abuse based on a substantial risk of physical injury. See, *e.g.*, *In re Tamesha T.*, 2014 IL App (1st) 132986, ¶ 44 (finding that the same facts that supported a finding of neglect also supported a finding of abuse); *In re R.G.*, 2012 IL App (1st) 120193, ¶ 46 (same). Consequently, we cannot find that the juvenile court was required to set forth separate reasoning for both the finding of neglect and the finding of abuse.

¶ 35    Finally, we find unpersuasive respondent's contention that the evidence did not establish that A.S. was at risk of "serious" injury, as there was no evidence that anyone had been physically injured by her conduct. First, the statute requires a "substantial *risk* of physical injury" (emphasis added) (705 ILCS 405/2-3(2)(ii) (West 2016)) to the minor, not proof of

such injury having occurred.[3] The fact that no one happened to be seriously injured during the previous instances of violence is merely fortuitous, not proof that respondent's conduct is acceptable. Additionally, abuse includes exposing the minor to a substantial risk of physical injury "which would be likely to cause *** impairment of emotional health." 705 ILCS 405/2-3(2)(ii) (West 2016). It is certainly not against the manifest weight of the evidence for the juvenile court to have determined that respondent's conduct created a substantial risk of physical injury that would be likely to impair A.S.' emotional health. Consequently, we cannot find that the juvenile court's adjudication order was against the manifest weight of the evidence.

¶ 36                                                    CONCLUSION

¶ 37        For the reasons set forth above, we affirm the juvenile court's adjudication order finding A.S. abused due to a substantial risk of physical injury. The juvenile court properly considered the entirety of respondent's medical records, and its finding of abuse was not against the manifest weight of the evidence.

¶ 38        Affirmed.

---

[3] Physical injury to the minor that has already occurred is covered under section 2-3(2)(i). See 705 ILCS 405/2-3(2)(i) (West 2016).

**No. 1-20-0560**

| | |
|---|---|
| **Cite as:** | *In re A.S.*, 2020 IL App (1st) 200560 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-JA-927; the Hon. John Huff, Judge, presiding. |
| **Attorneys for Appellant:** | Amy P. Campanelli, Public Defender, of Chicago (Susan A. Isaacson, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Gina DiVito, Assistant State's Attorneys, of counsel), for the People. |
| | Charles P. Golbert, Public Guardian, of Chicago (Kass A. Plain and Mary Brigid Hayes, of counsel), for appellee. |