2022 IL App (1st) 220759

No. 1-22-0759

Opinion filed November 3, 2022

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* G.U., K.G., and J.U., | ) | Appeal from the |
| | ) | Circuit Court of |
| Minors-Appellees, | ) | Cook County. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Nos. 20 JA 902 |
| Petitioner-Appellee, | ) | 20 JA 903 |
| | ) | 20 JA 904 |
| v. | ) | |
| | ) | Honorable |
| Elizabeth C.-G., | ) | Bernard Sarley, |
| | ) | Judge, presiding. |
| Respondent-Appellant). | ) | |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hoffman and Martin concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent Elizabeth C.-G. is the biological mother of three minors, K.G., G.U., and J.U.

¶ 2    Following an adjudicatory hearing on December 13, 2021, the circuit court found all three

minors to be neglected pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3 (West

2020)). The circuit court also found K.G. to be an abused minor under the Act. The circuit court

adjudged each minor a ward of the court at a dispositional hearing that concluded on May 11,

2022. On appeal, respondent only challenges the trial court's finding that K.G. was an abused minor under the Act. Respondent does not challenge the trial court's finding that each of the minors was neglected.

¶ 3        For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4                                I. BACKGROUND

¶ 5        Respondent is the mother of K.G. (born April 27, 2009), G.U. (born October 8, 2018), and J.U. (born September 23, 2017). Gabriel M. is the father of G.U. and J.U. He was a party to the proceedings below but is not a party in this appeal. K.G.'s father is Jacobo G., who was defaulted below for failure to appear and is also not a party to this appeal.

¶ 6        On June 11, 2020, the State filed a petition for adjudication of wardship as to each minor. Each petition contained one count alleging the minors were neglected and one count alleging that the minors were abused. The petitions each alleged similar facts. Gabriel had two prior indicated reports,[2] one for sexual molestation of K.G. and one for substantial risk of sexual abuse and substantial risk of physical injury to the minors' health and welfare by neglect. Respondent had a prior indicated report for substantial risk of sexual abuse and physical injury due to an environment injurious to the minors' health by neglect. There was a history of domestic violence between Gabriel and respondent, and the two continued to reside together.

¶ 7        On June 12, 2020, the trial court placed all three minors in the temporary custody of the Department of Children and Family Services (DCFS).

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2] An indicated report is "a report made under this Act if an investigation determines that credible evidence of the alleged abuse or neglect exists." 325 ILCS 5/3 (West 2020).

¶ 8     The State amended the petitions in October 2020. The State added that, on June 7, 2020, Gabriel and respondent were involved in a verbal and physical altercation wherein Gabriel extinguished a lit cigarette on respondent's chest and punched K.G. in the stomach.

¶ 9     The adjudicatory hearing was held on December 13, 2021. Chicago police officer Sherry Lam testified that she responded to a domestic call on June 7, 2020. At the scene, Lam saw respondent with K.G. K.G. told Lam that Gabriel and respondent were in an argument. During the argument, Gabriel took a cigarette out of respondent's hand and burned a hole in respondent's T-shirt. K.G. explained that she tried to "get in-between" Gabriel and respondent. Gabriel then punched K.G. in the stomach and pushed her away. Gabriel was arrested at the residence.

¶ 10    DCFS child protection investigator Miguel Sandoval testified that he investigated allegations of abuse and neglect regarding K.G. in July 2018. Sandoval investigated allegations of substantial risk of harm and sexual abuse or access to a sexual abuse offender. During the investigation, Sandoval interviewed respondent, who stated that there was an order of protection prohibiting Gabriel from having any contact with respondent, K.G., and J.U. Despite the order of protection, respondent had K.G. and J.U. spend a night at Gabriel's residence. Sandoval found K.G. neglected in that she spent the night at Gabriel's residence in violation of an order of protection and while Gabriel had a prior indicated finding of sexual molestation. Sandoval also found K.G. neglected due to K.G.'s exposure to "domestic violence" and "verbal abuse" between Gabriel and respondent.

¶ 11    DCFS child protection investigator Zulema Ortiz testified that she was assigned to investigate the allegations of abuse and neglect at issue in this case. Ortiz interviewed respondent on June 9, 2020. Respondent explained that Gabriel had visited to take G.U. and J.U. to get ice

cream. When they returned, Gabriel was "aggressive" toward respondent and was arrested based on his conduct. Respondent explained that there was a current order of protection that was to expire in September 2020. Ortiz also interviewed K.G., who stated that she had last seen Gabriel a week before when he was arrested after being "aggressive" towards her mother. K.G. also said that Gabriel had been living with the family up until about a month and a half before Gabriel's arrest. K.G. told Ortiz that she had previously overheard "altercations" between respondent and Gabriel and that she knew Gabriel had hit respondent before. Ortiz recommended that the case be indicated as to each minor.

¶ 12    The People then offered a certified protective order entered on September 18, 2018. Respondent was the petitioner and Gabriel the respondent. The protected persons were respondent and K.G. Gabriel was ordered to "stay away from" the two protected persons. The order was to be effective until September 17, 2020.

¶ 13    The trial court found that the order of protection was in effect at the time that Lam was called to respondent's residence on June 7, 2020. Gabriel was not to have any contact with respondent or K.G., so his "mere presence" at the residence on that day was a violation of the order of protection. The trial court also noted the evidence that Gabriel struck K.G. as she attempted to intervene in the altercation between Gabriel and respondent. The trial court found K.G. abused and neglected based on the testimony and order of protection. The trial court found G.U. and J.U. neglected based on an injurious environment because they were present while domestic violence was occurring. Both parents were the perpetrators of the neglect findings, and Gabriel was the perpetrator as to the abuse finding for K.G.

¶ 14    The trial court's dispositional order was entered on May 11, 2022. Each of the minors were adjudged wards of the court. The trial court found respondent unable to care for, protect, train, or discipline the children. Respondent filed a notice of appeal on May 31, 2022.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, respondent only challenges the trial court's finding at the adjudication hearing that K.G. was an abused minor under the Act. Respondent does not challenge the trial court's adjudicatory finding that all three minors were neglected under the Act. Respondent also does not challenge the trial court's finding at the dispositional hearing that she was unable to care for the minors.

¶ 17    "A proceeding for adjudication of wardship 'represents a significant intrusion into the sanctity of the family which should not be undertaken lightly.' " *In re Arthur H*., 212 Ill. 2d 441, 463 (2004). "In proceedings under the Act, the paramount consideration is the best interests of the child." *In re Z.L.*, 2021 IL 126931, ¶ 58. "The step-by-step process used to decide whether a child should be removed from his or her parents and made a ward of the court is set forth in the Juvenile Court Act of 1987." *In re Arthur H.*, 212 Ill. 2d at 462. "The trial court must employ a two-step process to make this determination." *In re Z.L.*, 2021 IL 126931, ¶ 58.

¶ 18    "Step one is the adjudicatory hearing on the petition for adjudication of wardship." *Id.* ¶ 59. At the adjudicatory hearing, " 'the court shall first consider only the question whether the minor is abused, neglected or dependent.' " *Id.* (quoting 705 ILCS 405/2-18(1) (West 2018)). "If the trial court determines that a minor is abused or neglected at the adjudicatory hearing, the court then moves to step two, which is the dispositional hearing." *Id.* ¶ 60 (citing 705 ILCS 405/2-21(2) (West 2018)). "At the dispositional hearing, the trial court determines whether it is consistent with the

health, safety, and best interests of the minor and the public that the minor be made a ward of the court." *Id.*

¶ 19    Respondent only challenges the trial court's finding that K.G. was an abused minor under the Act. Thus, she has waived the issue of whether the evidence established that G.U., J.U., and K.G. were neglected minors under the Act. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***.") That raises an issue of whether respondent's challenge to the abuse finding is moot. A case is moot " 'when it does not involve any actual controversy' " and "the decision of a reviewing court can have no practical effect on the parties." *In re Lakita B*., 297 Ill. App. 3d 985, 992 (1998). As just discussed, at the adjudicatory hearing, the trial court considers whether a minor is "abused, neglected *or* dependent." (Emphasis added.) 705 ILCS 405/2-18(1) (West 2020). A finding on any one of the three grounds is sufficient for the case to proceed to the dispositional hearing.

¶ 20    In *Lakita B*., the trial court found the respondent mother both unable and unfit to properly care for the minor. *Lakita B*., 297 Ill. App. 3d at 991. On appeal, the mother conceded that the trial court properly found her unable to properly care for the minor, but she challenged the trial court's finding that she was unfit. *Id.* Because the conceded ground was sufficient by itself to uphold the trial court's judgment, the court found the additional issue of whether the mother was unfit to be moot. *Id.* at 992-93. Here, as in *Lakita B*., respondent concedes that the trial court's neglect finding was supported by the evidence. That finding alone was sufficient for the case to proceed to the dispositional hearing, and respondent has further conceded that the trial court properly found her unable to properly care for the minors at the dispositional hearing. See *In re Faith B*., 216 Ill. 2d 1, 15 (2005) (concluding that because the circuit court properly found the minors neglected based on an injurious environment, the court "need not review the circuit court's additional finding that

the minors were abused or neglected based on physical abuse"). Thus, even if we were to agree with respondent that the abuse finding was against the manifest weight of the evidence, it is unclear what practical effect that decision would have on the parties. *Contra In re S.G.*, 2022 IL App (1st) 210899, ¶ 24 (opting to review the respondent's challenge to an abuse finding despite the respondent's failure to challenge the neglect finding). We conclude that the issue is moot.

¶ 21    Mootness aside, we would still affirm the trial court's finding that K.G. was an abused minor under the Act on the merits. An abused minor under section 2-3 of the Act includes one whose parent or other person responsible for her welfare "creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function." 705 ILCS 405/2-3(2)(ii) (West 2020). The State has the burden to prove abuse by a preponderance of the evidence. *In re A.P.*, 2012 IL 113875, ¶ 17. This means that the State must prove that the allegations of abuse are "more probably true than not." *Id.* A trial court's finding of abuse will not be reversed unless it is against the manifest weight of the evidence. *Id.* "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id.*

¶ 22    Here, the trial court's finding that K.G. was an abused minor is not against the manifest weight of the evidence. The evidence established that respondent was unable to keep Gabriel away from K.G. despite a valid order of protection, which named respondent and K.G. as protected parties, and that respondent had knowledge that an indicated finding had been made that Gabriel sexually molested K.G. What flowed from that failure to keep K.G. away from Gabriel was K.G.'s intervention in an altercation between respondent and Gabriel, where Gabriel extinguished a lit cigarette on respondent, punched K.G. in the stomach, and pushed K.G. away. This evidence was certainly sufficient to support a finding that K.G. was placed at a "substantial *risk* of physical

injury" likely to cause "impairment of emotional health" or "loss or impairment of any bodily function." (Emphasis added.) See 705 ILCS 405/2-3(2)(ii) (West 2020); see also *In re A.S.*, 2020 IL App (1st) 200560, ¶ 35 (upholding an abuse finding, even though no injury had yet occurred, because it is the risk of injury that is paramount, not whether an injury was already inflicted).

¶ 23    Respondent argues that the evidence of Gabriel punching and pushing K.G. cannot form the basis of the abuse finding under the Act. Section 2-18(4)(c) of the Act provides: "Previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect." 705 ILCS 405/2-18(4)(c) (West 2020). Respondent contends that the evidence that Gabriel punched K.G. in the stomach and pushed her was uncorroborated.

¶ 24    We reject respondent's argument where her own statements, admitted into evidence through Ortiz, established that she and Gabriel got into an argument, Gabriel was "aggressive towards her," and Gabriel was arrested after a neighbor called the police. To " 'corroborate' " means to " 'add weight or credibility to a thing by additional and confirming facts or evidence.' " *In re Custody of Brunken*, 139 Ill. App. 3d 232, 239 (1985). "In the criminal context, there is no requirement that corroborating evidence prove commission of an offense beyond a reasonable doubt." *In re Z.C.*, 2022 IL App (1st) 211399, ¶ 51. "The same is true in the context of these proceedings." *Id.* Respondent's statements to Ortiz added weight to K.G.'s out-of-court statements because they confirmed that Gabriel had been aggressive towards respondent and that he was arrested as a result. Because respondent's statements corroborated K.G.'s out-of-court statements, K.G.'s statements that she had to intervene in an altercation between Gabriel and respondent, that

Gabriel punched her in the stomach, and that Gabriel pushed her away were sufficient to support the abuse finding.

¶ 25                                III. CONCLUSION

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 27    Affirmed.

2022 IL App (1st) 220759

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 20-JA-902, 20-JA-903, 20-JA-904; the Hon. Bernard Sarley, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Suzanne A. Isaacson, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Gina DiVito and Victoria L. Kennedy, Assistant State's Attorneys, of counsel), for the People.<br><br>Charles P. Golbert, Public Guardian, of Chicago (Kass A. Plain and Christopher J. Williams, of counsel), for other appellees. |