2016 IL App (1st) 151762
No. 1-15-1762
Opinion filed May 3, 2016

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ANDREW KRECZKO, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Platiniff-Appellant, | ) ) | |
| v. | ) ) | No. 13 L 50566 |
| | ) | |
| TRIANGLE PACKAGE MACHINERY CO., | ) ) ) | The Honorable James M. McGing, |
| Defendant-Appellee. | ) ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Simon concurred in the judgment and opinion.

**OPINION**

¶ 1     After receiving several customer complaints about his job performance and unprofessional behavior, Triangle Package Machinery Company fired Andrew Kreczko. Four months later, Triangle hired a younger, Hispanic employee to fill Kreczko's position. Kreczko, 51, sued Triangle alleging age, disability, and racial discrimination. The trial court dismissed the racial discrimination claim, and later granted Triangle's motion for summary judgment on the remaining claims, finding (i) Kreczko failed to establish a *prima facie* case of unlawful discrimination because it was shown that Kreczko fell short in meeting his legitimate

performance expectations, and (ii) Triangle's reason for firing Kreczko was not a pretext for unlawful discrimination.

¶ 2      On appeal, Kreczko argues that genuine issues of material fact exist as to whether Triangle fired him due to his age and disability in violation of the Illinois Human Rights Act (Act) (775 ILCS 5/2-101 *et seq.* (West 2014)). Kreczko also contends the trial court should have stricken an affidavit of Triangle's president because it was based on his "knowledge, information, and belief" rather than knowledge alone.

¶ 3      We affirm. The record shows Triangle terminated Kreczko for unsatisfactory job performance and this reason was not pretextual. Further, the trial court correctly let the entire affidavit stand as being made on personal knowledge except for a single paragraph, which was stricken.

¶ 4      BACKGROUND

¶ 5      Triangle designs, manufactures, and services food packaging equipment. Triangle hired Kreczko as a service technician in 2002. In June 2008, Kreczko went to Advance Foods, a Triangle customer, for the purpose of upgrading one of its machines. An email exchange between members of Triangle management explains that Kreczko left the service call without completing several essential tasks, including checking the machine's controls and running the machine to ensure the upgrade worked. Another Triangle employee was sent to Advance Foods and discovered the machine was not working properly. The email states, "This looks horrible to the customer and Andy should have finished the upgrade \*\*\*. This is inexcusable and should NEVER happen again in the future. I know this was Andy's first Pentium upgrade and I don't mean to dog Andy, but this is common sense. The machine has to be functional to the best of his knowledge before he leaves."

¶ 6       Six months later, another Triangle customer, ConAgra, complained to Triangle that Kreczko lacked adequate knowledge to perform a service call at its facility and the machine he was to repair failed after he left.

¶ 7       The following month, January 2009, Kreczko met with Triangle management to discuss his performance. A representative from the International Association of Machinists and Aerospace Workers Union and the chair of Triangle's union committee also were present. A memo summarizing the meeting noted that Triangle would be eliminating Kreczko's service activity on one of its machines and retraining him on two other machines. Kreczko did not return to making service calls until 2010. This meeting was memorialized in a memo on which Kreczko was copied.

¶ 8       Despite the retraining, Kreczko continued to exhibit poor working knowledge of Triangle's machines. In March 2011, after seeing Kreczko unsatisfactorily work on a machine, Triangle's director of operations told him he needed to improve.

¶ 9       In December 2010, Triangle's president sent a memo to all company employees advising them that they would be subject to discipline, including termination, should they disparage Triangle to customers. Six months later, Advance Pierre, a Triangle customer, complained that Kreczko had inadequate knowledge about its equipment and had described Triangle as "screwed up." Advance Pierre also asserted that Kreczko spent too much time in a break room, which he blamed on cold air near the machines.

¶ 10       On June 16, 2011, Triangle fired Kreczko. His termination memo listed the customer complaints regarding his performance and stated:

> "It is clear that your behavior in front of Triangle customers continues to be inappropriate and unprofessional. Your working knowledge of the equipment, despite

efforts to retrain you and select jobs within your skill set, is not sufficient to qualify you as a Triangle Service Technician.

Due to the continuing lack of improvement in your knowledge of our machinery, the number of negative reports you have received from customers and your inability to represent the company in an appropriate manner, I have decide[d] to terminate you immediately."

¶ 11    The day he was fired, Kreczko filed a grievance with his union, claiming due process was not observed. The union reviewed the claim, and concluded it lacked merit. Kreczko then filed a charge with the Illinois Department of Human Rights (IDHR) alleging age and disability discrimination under the Act. 775 ILCS 5/2-101 *et seq*. (West 2014). The IDHR dismissed the charge for lack of substantial evidence to support the allegations of discrimination.

¶ 12    Kreczko then sued Triangle in circuit court, alleging age discrimination (count I), handicap/disability discrimination (count II), and racial discrimination (count III). In count I, Kreczko alleged that as a 51-year-old he was in a protected class, that he was performing his work as a service technician in an exemplary fashion, which met Triangle's legitimate expectations, and that he was replaced by a younger employee. In count II, Kreczko asserted he had a heart attack in 2001 after a boating accident. He had a stent implanted and takes daily medication for his heart. Kreczko alleged Triangle knew of his preexisting heart condition when hiring him and knew that he had difficulty working in certain conditions, such as extreme heat, but criticized his work performance in those conditions. Kreczko further alleged he had been assigned an out-of-state service call on the Friday before a Saturday doctor's appointment and that a Triangle vice-president directed him to cancel the appointment. Instead, Kreczko went on the service call the following Monday and contends that shortly after this incident, he was fired.

Count III alleged discrimination based on race because an Hispanic employee replaced him. In all three counts, Kreczko asserted that a contention by Triangle that he was fired for a reason other than age, disability, or race constituted a mere pretext for unlawful discrimination.

¶ 13    Triangle moved to dismiss count III, alleging racial discrimination, and after a hearing, the trial court granted the motion with prejudice. Triangle then moved for summary judgment on the two remaining counts, arguing that Kreczko failed to show he was fired based on his age or purported disability. The motion attached an affidavit from the Triangle president, Bryan Muskat, stating, in part, that (i) Kreczko was fired for poor performance, (ii) before being fired, Kreczko hadn't complained about discrimination of any kind, and (iii) Kreczko had several performance issues and complaints from customers. Muskat further stated that of the 18 employees in Kreczko's department when he was fired, 16 were over 40 years old, that only 23 out of Triangle's 156 employees were under the age of 40, and that everyone involved in the termination decision was as old or older than Kreczko. He also stated that although Kreczko told Triangle about his accident, he never provided information from a physician or asked for an accommodation for a heart condition and was never disciplined for rescheduling an appointment with a customer due to a doctor's appointment.

¶ 14    Kreczko moved to strike or dismiss Triangle's motion for summary judgment, contending Muskat's affidavit did not comply with Illinois Supreme Court Rule 191(a), (b) (eff. Jan, 4, 2013) or section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2014)), in that its statements were based on "personal knowledge, *information and belief*" (emphasis added) rather than simply on personal knowledge.

¶ 15    After a hearing, the trial court denied Kreczko's motion to strike or dismiss. The trial court found Muskat's affidavit satisfactory, and let the entire affidavit stand as made on personal

knowledge, except for one paragraph which was stricken. The court also granted Triangle's motion for summary judgment as to counts I and II and dismissed the case. The court found Kreczko had not established a *prima facie* case of age or handicap discrimination because he failed to meet his employer's legitimate performance expectations. The court pointed to four instances in which Kreczko's performance fell below expectations. Namely, the trial court noted that while upgrading a machine at Advanced Foods, Kreczko failed to perform essential tasks, such as checking the machine's performance to determine if the upgrade worked. Kreczko also received a negative review from Con Agra for not having sufficient knowledge of the machinery. Kreczko was taken off of service calls and given additional training, but Triangle's director of operations observed him continuing to exhibit inadequate knowledge about Triangle's equipment and machines. Lastly, while on a service call at Advanced Pierre, Kreczko again displayed inadequate knowledge about the machinery and disparaged Triangle in violation of a company directive. The court held that even if Kreczko could establish a *prima facie* case of age or disability discrimination, he failed to establish the reasons Triangle gave for terminating him were merely pretextual.

¶ 16                                                  ANALYSIS

¶ 17                                      Sufficiency of Muskat's Affidavit

¶ 18         Before granting Triangle summary judgment, the trial court denied Kreczko's motion to strike or dismiss the summary judgment motion based on purported defects in Muskat's affidavit. Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) covers the sufficiency of an affidavit. Rule 191(a) provides that an affidavit must be (i) made on the affiant's personal knowledge, (ii) not consist of conclusions but facts admissible in evidence, and (iii) affirmatively show that the affiant could testify competently about those facts. *Id*. Rule 191 is satisfied where, viewed as a

whole, the affidavit relies on personal knowledge and there is a reasonable inference the affiant could competently testify to its contents at trial. *Burks Drywall, Inc. v. Washington Bank & Trust Co.*, 110 Ill. App. 3d 569, 576 (1982). Courts accept an affidavit as true if it is not contradicted by counteraffidavit or other evidentiary materials. *Lindahl v. City of Des Plaines*, 210 Ill. App. 3d 281, 299 (1991). The decision to strike a Rule 191 affidavit falls within the trial court's sound discretion. *American Service Insurance Co. v. China Ocean Shipping Co. (Americas), Inc.*, 402 Ill. App. 3d 513, 524 (2010). Generally, the trial court should strike just the improper portions of an affidavit. *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119, 128 (2003).

¶ 19　　　　Kreczko contends the trial court erred in denying his motion to strike Triangle's summary judgment motion because Muskat's affidavit did not state that it was based on his personal knowledge but instead relies on "his personal knowledge, information and belief." (Muskat also gave a supplemental affidavit, which did not contain the "information and belief" language.) Kreczko contends Supreme Court Rule 191 is strictly construed and inclusion of the words "information and belief" renders the entire affidavit defective. We disagree.

¶ 20　　　　Aside from the reference to "information and belief," Muskat's affidavit complies with Supreme Court Rule 191. As the trial court noted, the statements in the affidavit are facts reasonably within Muskat's personal knowledge as Triangle's president, with the exception of the paragraph which avers that Kreczko never complained about discrimination before his firing or during his post-termination grievance with the union. The affidavit does not consist of conclusions, but sets out facts admissible in evidence, including the dates of Kreczko's employment, the customer complaints about his performance, the ages of Triangle's employees, and Triangle's knowledge about Kreczko's heart condition. Further, the affidavit recited that if sworn as a witness, the affiant could testify competently about the statements.

¶ 21    An affidavit based solely on information and belief, which does not indicate that the affiant could competently testify to the facts, would bypass the requirements of Rule 191. *Hedrick v. Goodwin Brothers, Inc.*, 26 Ill. App. 3d 327, 329 (1975). But, an affidavit expressly declaring that the affiant has personal knowledge of its facts and that if called as a witness could competently testify to those facts satisfies Rule 191, even with the inclusion of the extra phrase "information and belief." See *Downers Grove Associates v. Red Robin International, Inc.*, 151 Ill. App. 3d 310, 316-17 (1986) (affidavit not deficient simply because includes words "on information and belief"). The affidavit fulfills the requirements of Rule 191 and the trial court did not err in rejecting Kreczko's argument that the Muskat's affidavit was defective.

¶ 22                                    Order Granting Summary Judgment

¶ 23    Kreczko next contends the trial court erred in granting Triangle's motion for summary judgment as genuine issues of material fact exist as to whether Triangle fired him over age and disability.

¶ 24    Summary judgment is appropriate where the pleadings, admissions, depositions, and affidavits demonstrate no genuine issues of material fact and, as a matter of law, the moving party is entitled to judgment. 735 ILCS 5/2-1005(c) (West 2014); *Richardson v. Bond Drug Co. of Illinois*, 387 Ill. App. 3d 881, 884 (2009). During the summary judgment phase, a plaintiff does not need to prove his or her entire case but must present some evidentiary facts to support the elements of the cause of action. *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d 1081, 1085 (2009). The court construes the evidence in favor of the nonmoving party. *Richardson*, 387 Ill. App. 3d at 884. We review the grant of summary judgment *de novo*. *Id*.

¶ 25                                    Age Discrimination Claim

¶ 26    In reviewing employment discrimination actions brought under the Act, Illinois courts apply a three-part analysis adopted in *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172 (1989): (i) the plaintiff must establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence (*Van Campen v. International Business Machines, Corp.*, 326 Ill. App. 3d 963, 971 (2001)); (ii) to rebut the presumption of unlawful discrimination, the employer must articulate a legitimate, nondiscriminatory reason for its employment decision (*id.*); and (iii) if the employer establishes a legitimate reason, the plaintiff must prove that the reason was merely a pretext for unlawful discrimination. *Id*.

¶ 27    To establish a *prima facie* case of age discrimination by a preponderance of evidence a plaintiff must show: (1) he or she is a member of a protected class; (2) he or she was performing satisfactorily; (3) he or she was discharged despite the adequacy of her work; and (4) a similarly situated employee who was not a member of the protected group was not discharged. *Marinelli v. Human Rights Comm'n*, 262 Ill. App. 3d 247, 253 (1994); *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

¶ 28    Kreczko was 51 years old when Triangle fired him and Triangle does not dispute that he was a member of a protected class based on his age. But, Triangle asserts that Kreczko cannot satisfy either the second or fourth prong to establish a *prima facie* case of age discrimination, because the record shows he was not satisfactorily performing his job or that a similarly situated younger employee was not subject to the same adverse action. We agree.

¶ 29    As to Kreczko's job performance, Triangle documented at least three instances when Kreczko failed to meet Triangle's standards of performance and was the subject of a customer complaint. As noted, while upgrading a machine at Advanced Foods, Kreczko left without performing several essential tasks, including checking whether the upgrade worked. As a result,

another Triangle employee had to go to Advanced Foods to finish the service call. Con Agra, another Triangle customer, complained that Kreczko did not have sufficient knowledge of the machinery. Lastly, while on a service call at Advanced Pierre, Kreczko again displayed inadequate knowledge about the machinery and acted unprofessionally by spending too much time in the break room and disparaging Triangle in violation of a company directive.

¶ 30      Triangle memorialized these incidents in writing through email messages and a memo and met with Kreczko on at least two occasions to advise him that he needed to improve his performance. Kreczko contends, however, that he did not receive documentation about the customer complaints until the date of his deposition and thus, was not given the opportunity to dispute them. Kreczko asserts that his affidavit, in which he states he received no complaints from customers and performed his job satisfactorily, creates a question of material fact and thus, the trial court should have denied the motion for summary judgment.

¶ 31      Affidavits submitted in opposition to motions for summary judgment must consist of facts admissible in evidence rather than conclusions, and conclusory matters may not be considered in opposition to motions for summary judgment. *O'Rourke v. Oehler*, 187 Ill. App. 3d 572, 585 (1989). Summary judgment determines whether a triable issue of fact exists. *Haberer v. Village of Sauget*, 158 Ill. App. 3d 313, 316 (1987). A plaintiff cannot create a triable issue of fact by the conclusory affidavit. *Northrop v. Lopatka*, 242 Ill. App. 3d 1, 9 (1993). Kreczko's affidavit in support of his response to Triangle's motion for summary judgment, stating that he did a good job and did not know the customer had complained about him, does not create issues of material fact regarding Kreczko's performance.

¶ 32      Moreover, while Kreczko may not have physically received copies of the emails, he was at the January 21, 2009 meeting with management to discuss ConAgra's complaint about his

performance on a service call. He also was copied on a memo memorializing the meeting and referencing prior customer complaints. Further, the memo advising employees that disparaging the company could result in termination was sent to all Triangle employees. Thus, no basis exists for finding Kreczko unaware of customer complaints or of Triangle's unhappiness with his performance.

¶ 33     Kreczko also has failed to show that a similarly situated younger employee was not discharged. Kreczko does not identify a younger employee who was similarly situated but permitted to retain his or her job. But, Kreczko asserts that he can establish this element indirectly based on Triangle's decision to replace him with a younger employee. While it is true that Triangle eventually hired a younger man to replace Kreczko, that occurred four months after his firing. Under the circumstances, this is not sufficiently close in time to draw an inference of age discrimination.

¶ 34     Thus, because Kreczko did not show that he was performing satisfactorily or that a similarly situated younger employee was not discharged, he failed to establish a *prima facie* case of age discrimination, and the trial court did not err in granting Triangle summary judgment on this allegation.

¶ 35                              Disability Discrimination Claim

¶ 36     As with age discrimination claims, a plaintiff alleging disability discrimination must first establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Van Campen*, 326 Ill. App. 3d 970-71. If the plaintiff satisfies this step, the employer must articulate a legitimate, nondiscriminatory reason for its employment decision to rebut the presumption of unlawful discrimination. *Id*. at 971. If the employer establishes a legitimate reason, the plaintiff must prove that the reason was merely a pretext for unlawful discrimination. *Id*. Assuming

Kreczko had a disability, as noted, Triangle established a legitimate nondiscriminatory reason for terminating him that was not merely pretextual.

¶ 37    To establish a *prima facie* case of disability discrimination under the IHRA, a plaintiff is required to prove: (i) she was disabled within the definition of the IHRA; (ii) her disability is unrelated to her ability to perform the functions of the job she was hired to perform; and (iii) an adverse job action was taken against her related to her disability. *Id*.

¶ 38    Under the Act, "disability" is a "determinable physical or mental characteristic of a person *** or the perception of such characteristic by the person complained against, which may result from disease, injury, congenital condition of birth or functional disorder." 775 ILCS 5/1-103(I) (West 2014). This statutory definition has been interpreted by the Joint Rules of the Department and the Human Rights Commission as "not confined to only those physical and mental conditions that are grave or extreme in nature" but as excluding: (i) conditions that are transitory and insubstantial; and (ii) conditions that are not significantly debilitating or disfiguring. 56 Ill. Adm. Code 2500.20(b) (2009); see *Anderson v. Modern Metal Products*, 305 Ill. App. 3d 91, 98 (1999).

¶ 39    Kreczko contends he was involved in a boating accident in 2001 that caused a heart attack. He was hospitalized and had a stent inserted and ever since has been taking medication for his heart. Despite his heart condition, he maintains that he was asked to work in extremely hot conditions that caused him to sweat profusely and was fired shortly after postponing a service call that interfered with a doctor's appointment.

¶ 40    Triangle responds that Kreczko never provided verifiable medical documents regarding a heart condition. Triangle acknowledges Kreczko mentioned during his initial interview in 2002 that he had been injured in an accident, but asserts that Kreczko never: (i) claimed his condition

was a handicap or disability, (ii) stated that he was restricted from doing his job due to a heart condition; or (iii) asked for accommodations.

¶ 41　　Assuming Kreczko can make out a *prima facie* case of disability discrimination and satisfy the first prong of the test, Triangle has set forth a legitimate, nondiscriminatory reason for Kreczko's firing, and thus, he is unable to show that the proffered reason was only a pretext for unlawful discrimination.

¶ 42　　Triangle's reasons for firing Kreczko were legitimately based on his poor work performance. As noted, several customers complained about him and his inadequate knowledge of Triangle's machines, even after additional training. Triangle informed Kreczko of the issues and gave him several opportunities to address them before he was fired. Triangle also advised Kreczko not to disparage the company and doing so could result in discipline, including termination. Kreczko violated this directive when he told Advance Pierre that Triangle was "screwed up."

¶ 43　　Thus, we affirm the trial court's order granting summary judgment on both his age and disability discrimination claims.

¶ 44　　Affirmed.