2022 IL App (1st) 220369-U

No. 1-22-0369

Order filed December 30, 2022

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| MARCUS A. WINSTON, | ) |
| | ) Petition for Direct |
| Petitioner-Appellant, | ) Administrative Review of a |
| | ) Decision of the Illinois Human |
| v. | ) Rights Commission |
| | ) |
| OZINGA READY MIX CONCRETE, INC., ILLINOIS | ) |
| HUMAN RIGHTS COMMISSION, and ILLINOIS | ) Charge No. 2020 CF 2910 |
| DEPARTMENT OF HUMAN RIGHTS, | ) EEOC No. 21 BA 01746 |
| | ) ALS No. 21-0271 |
| Respondents-Appellees. | ) |

PRESIDING JUSTICE CONNORS delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: The Human Rights Commission did not abuse its discretion in sustaining the Department of Human Rights' dismissal of petitioner's employment discrimination charge for a lack of substantial evidence.

¶ 2    Petitioner Marcus A. Winston appeals from a final decision of the Human Rights Commission (Commission) sustaining the Department of Human Rights' (Department) dismissal of his charge alleging that his employer, Ozinga Ready Mix Concrete, Inc. (Ozinga), violated the

Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2020)) when it discharged him for (1) his disability, (2) his race, and (3) in retaliation for his filing previous charges with the Department. For the following reasons, we affirm.

¶ 3    On May 12, 2020, petitioner filed an employment discrimination charge with the Department against Ozinga.[1] He perfected the charge on September 23, 2020. He alleged three counts, that Ozinga's president, Lloyd Meyers, discharged him on March 17, 2020, for (1) his disability, prostate cancer, (2) his race, black, and (3) in retaliation for filing prior charges with the Department. He asserted that Meyers provided no reason for discharging him. Ozinga asserted that petitioner was discharged for a legitimate, non-discriminatory reason, namely, failing to return to work following his cancer diagnosis or provide medical documentation that his cancer constituted a disability precluding him from performing his duties.

¶ 4    The Department investigated the charge. According to the investigation report, petitioner was hired at Ozinga as a Ready-Mix Driver in June 2006. Ozinga's "Attendance Discipline Policy" provided that an employee's first unexcused "call-off" would result in a written warning, the second would result in suspension, and the third would result in discharge. Section 12-2.4 of Ozinga's "Collective Bargaining Agreement" further provided that absence for five consecutive days without reasonable cause would result in discharge. Ozinga's "Family Medical Leave Act Policy" provided that an employee was eligible for leave if they had worked a certain number of hours preceding the claim and that an employee on medical leave must certify the requested leave

---

[1] On the same date, petitioner also filed an employment discrimination charge against Lloyd Myers, president of Ozinga. The Commission sustained the Department's dismissal of the charge and this court affirmed. *Winston v. Myers, Illinois Human Rights Commission, and Illinois Department of Human Rights*, 2022 IL App (1st) 2200368-U.

is due to their condition.[2] Ozinga also had a "Progressive Discipline Policy" providing that there would be progressive discipline unless an employee's conduct was "so flagrant or so disruptive" that it required immediate and severe discipline.

¶ 5    In February and June 2019, petitioner filed discrimination charges against Ozinga with the Department. He stated that, in mid-2019, he was diagnosed with prostate cancer and Ozinga granted him medical leave.

¶ 6    Samantha Findlay, Ozinga's human resources manager, stated that, in October 2018, petitioner caused a "serious accident," and, in lieu of discharge, Ozinga issued him a "Last Chance Agreement."[3] Petitioner left work on August 19, 2019, and his wife requested documentation for leave under the Family Medical Leave Act (FMLA). Ozinga sent the documentation on August 20, 2019, but petitioner's request was denied as he had only worked 75 days in the prior 12 months and did not qualify for FMLA. On September 20, 2019, petitioner's physician provided Ozinga with documentation of his diagnosis. Ozinga authorized him to take unpaid medical leave but Findlay phoned petitioner's wife multiple times in August and September 2019 to explain he had to provide medical documentation that he could not work. On September 24, 2019, petitioner filed another charge with the Department against Ozinga.

¶ 7    On October 30, 2019, having not received documentation that petitioner could not work, Findlay sent petitioner a letter requesting he provide the documents by November 4, 2019, or sign an authorization allowing her to contact his medical provider. The letter indicated that if he failed

---

[2] The investigation report states that the policy indicates "that an employee is eligible for leave if they have worked 1250 hours in the prior as month [*sic*]."

[3] The investigation report variously states that the Last Chance Agreement occurred in October 2018 and October 2019, but the record makes clear that it occurred in October 2018.

to provide the documents, Ozinga could not hold his position open. When petitioner did not respond, Findlay sent another letter on November 5, 2019, specifying the documents Ozinga needed. The letter informed him that if he did not respond or provide the documents by November 27, 2019, he would be discharged. She attached a draft letter to his physician he could sign. On November 26, 2019, he filed another charge against Ozinga.

¶ 8 Petitioner did not comply with Findlay's November 5 letter but Findlay stated that on December 3, 2019, petitioner's wife notified Findlay that he had a doctor's appointment on December 20, 2019, after which she would provide the requested documents. Findlay did not receive any documents from petitioner, so on January 15, 2020, sent him another letter. The letter informed petitioner that he was to meet with Findlay on January 20, 2020, to return to work or provide documentation that he was still unable to work, his employment was in jeopardy, and Ozinga could not hold his position open without proper medical documentation. On January 17, 2020, petitioner's wife notified Findlay that his doctor's appointment had been postponed to January 22, 2020.

¶ 9 Findlay stated that, on January 23, 2020, petitioner's wife emailed Findlay a "return to work slip" dated January 22, 2020, that indicated his "return to work date is still to be determined." On February 15, 2020, Findlay sent petitioner a letter indicating that he must meet with her on March 2, 2020, to return to work or provide documentation that he still could not work. The letter provided that failing to appear at the March 2, 2020, meeting would be considered insubordination and jeopardize his employment.

¶ 10 Petitioner stated that in mid-February 2020 he notified Ozinga's "dispatch department" that his doctors had not released him and he could not come to work. He did not call Findlay.

Meyers stated that when Findlay received no response to her letter by March 2, 2020, she met with him early that month. Meyers decided to discharge petitioner given his failure to cooperate with Ozinga's requests to obtain the medical documents which would extend his medical leave.

¶ 11    On March 17, 2020, Meyers sent petitioner a letter stating that he considered petitioner to have voluntarily resigned his position, effective immediately. According to the investigation report, Meyers's letter noted petitioner was warned in Findlay's February 15, 2020, letter that failure to appear on March 2, 2020, would constitute insubordination and could result in his termination. Meyers's letter indicated Ozinga considered petitioner's discharge was warranted given his absence from work for two weeks since March 2, 2020, without notifying Ozinga or reasonable cause, and his insubordination in failing to appear on March 2, 2020, "coupled with" the Last Chance Agreement from October 2018. However, to avoid negatively affecting his future work opportunities, Ozinga considered him to have voluntarily resigned.

¶ 12    According to the investigation report, in rebuttal to Ozinga's evidence, petitioner admitted that he did not respond to Findlay following her February 15, 2020, letter, but Ozinga nevertheless had no right to discharge him while he was on medical leave. He did not respond to Findlay because he believed she was harassing him with a "constant bombardment of hostile letters." He believed that Meyers and Findlay would have discharged him "no matter what he did." He also presented a "Verification of Disability" completed by a doctor, dated September 4, 2020, indicating that he was diagnosed with prostate cancer and the condition was "minor and was not a permanent condition."

¶ 13    Following the investigation, the investigator recommended a finding of lack of substantial evidence to support petitioner's charge of race discrimination, disability discrimination, and

retaliation. The investigator found that petitioner was discharged for violating Ozinga's Attendance Discipline Policy, which states an employee would be discharged for three unexcused "call-offs," and section 12-2.4 of Ozinga's Collective Bargaining Agreement, which stated that five days' consecutive absence without reasonable cause would result in discharge. The investigator stated the evidence showed petitioner left work on extended medical leave on August 19, 2019, and never returned. He was diagnosed with prostate cancer but his physician indicated the condition was minor and impermanent.

¶ 14    The investigator found Ozinga's FMLA Policy indicated that an employee on medical leave must certify the requested leave is due to their condition. After being alerted to petitioner's cancer diagnosis, Ozinga attempted to obtain medical documentation related to his absence from November 2019 to February 2020, including the February 15, 2020, letter directing him to meet with Findlay to be assigned work or provide documentation that he still could not work. However, petitioner did not comply. Meyers mailed petitioner a letter on March 17, 2020, indicating that his discharge was warranted given his insubordination and unauthorized absences since March 2, 2020, but Ozinga considered him to have voluntarily resigned his employment to avoid negatively affecting his future work opportunities.

¶ 15    The investigator further noted that there was no evidence of a non-black or non-disabled employee being treated more favorably under similar circumstances or of animus against petitioner for his race or disability. Nor was there evidence of retaliatory conduct, as although petitioner engaged in a protected activity by filing the previous charges with the Department, Ozinga's actions were "consistent with their policies." The exhibits listed in the investigator's report included: Ozinga's Progressive Discipline Policy, Attendance Discipline Policy, section 12-2.4 of

its Collective Bargaining Agreement, and its FMLA Policy; the Last Chance Agreement; petitioner's FMLA documentation; petitioner's diagnostic outpatient order form, "Verification of Disability" form, and January 22, 2020 return to work slip; and Ozinga's letters to petitioner from October 2019, November 2019, January 2020, February 2020, and March 2020.[4]

¶ 16    On April 14, 2021, the Department dismissed petitioner's charge. On July 19, 2021, he requested the Commission review the Department's dismissal, arguing that he presented substantial evidence supporting his charge and the Department's investigation was inadequate. The Department filed a response.

¶ 17    On February 15, 2022, the Commission sustained the dismissal. The Commission concluded that the Department properly dismissed petitioner's charge for a lack of substantial evidence. First, the Commission found that he failed to establish a *prima facie* case of race discrimination as he failed to identify a similarly-situated, non-black employee whom Ozinga treated more favorably. The Commission further found that, had petitioner established a *prima facie* case, he failed to establish that Ozinga's stated reason for the discharge—that he did not comply with Ozinga's requests over several months to obtain the documents necessary to sustain his medical leave—was pretextual.

¶ 18    Second, the Commission found petitioner failed to establish a *prima facie* case of disability discrimination by failing to offer evidence that he had a permanent, significantly debilitating disability unrelated to his ability to perform his duties. The Commission noted that his "Verification of Disability" form indicated that his cancer was minor and impermanent.

---

[4] None of the exhibits are included in the record on appeal.

¶ 19    Third, the Commission found that petitioner's retaliation claim failed. He engaged in a protected activity by filing charges with the Department, and the closeness in time between the November 2019 charge and his March 2020 discharge created "an inference of causality." Again, however, he failed to establish that Ozinga's stated reason for discharging him was pretextual. Accordingly, he had not presented sufficient evidence to show his discharge violated the Act.

¶ 20    Defendant now appeals the Commission's decision. He argues that he presented substantial evidence supporting his allegations that he was unlawfully discharged for his disability and in retaliation for filing charges against Ozinga. He does not challenge the Commission's decision regarding his race-based discrimination claim.[5]

¶ 21    The Act makes it a civil rights violation for an employer to discharge an employee "on the basis of unlawful discrimination" (775 ILCS 5/2-102(A) (West 2020)), which includes race and disability (775 ILCS 5/1-103(Q) (West Supp. 2019)). Where an employee believes his or her employer has committed such a violation, the employee may file a charge with the Department. 775 ILCS 5/7A-102(A)(1) (West 2020). It is also a civil rights violation for an employer to retaliate against an employee because he has opposed what he "reasonably and in good faith believes to be unlawful discrimination" by, *inter alia*, making a charge or filing a complaint. *Id.* § 6-101(A).

¶ 22    When an employee files a charge with the Department, the Department investigates the allegations to determine whether the allegations in the charge are supported by substantial evidence. *Id.* § 7A-102(C)(1). "Substantial evidence is evidence which a reasonable mind accepts

---

[5] In the "Issue Presented for Review" section of his brief, petitioner also states that "there was inadequate investigation as to the supporting documentation" he provided. However, he does not make any argument addressing that issue. It is therefore forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("[p]oints not argued are forfeited").

as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id.* § 7A-102(D)(2). If the Department finds no substantial evidence that a civil rights violation was committed, the Director of the Department shall dismiss the charge. *Id.* § 7A-102(D)(3). If the Department dismisses the charge, the petitioner may request review in the circuit court or, as here, before the Commission. *Id.* § 7A-102(D)(3). If the Commission sustains the dismissal, the petitioner may appeal directly to this court. *Id.* § 8-111(B)(1).

¶ 23 We review the decision of the Commission, not the Department. *Alcequeire v. Human Rights Comm'n*, 292 Ill. App. 3d 515, 519 (1997). The Commission's findings of fact are entitled to deference and "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2020). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." (Internal quotation marks omitted.) *In re G.U.*, 2022 IL App (1st) 220759, ¶ 21.

¶ 24 However, the Commission's ultimate decision to sustain the dismissal of a charge for lack of substantial evidence will be reversed only if the decision was "arbitrary or capricious" or an abuse of discretion. *Spencer v. Illinois Human Rights Comm'n*, 2021 IL App (1st) 170026, ¶ 32; *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. A decision is arbitrary or capricious if "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." (Internal quotation marks omitted.) *Spencer*, 2021 IL App (1st) 170026, ¶ 32. We will find an abuse of discretion where no reasonable person could agree with the decision. *Id.* We will not reweigh the evidence or substitute our judgment for the Commission's. *Id.*

¶ 25    We begin with petitioner's disability discrimination claim. As petitioner does not allege there is direct evidence supporting his allegations, he must proceed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. 3d 774, 790 (2001). Under that framework, he must first prove a *prima facie* case by a preponderance of the evidence. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 918-19 (2010).

¶ 26    To make a *prima facie* showing of disability discrimination, a petitioner must show (1) he is disabled, (2) his disability is unrelated to his ability to perform the functions of his job, and (3) he suffered an adverse employment action related to his disability. *Kreczko v. Triangle Package Machinery Co.*, 2016 IL App (1st) 151762, ¶ 37. If the petitioner establishes a *prima facie* case by a preponderance of the evidence, the employer must rebut a presumption that they unlawfully discriminated against him by articulating "a legitimate, nondiscriminatory reason for its decision." *Spencer*, 2021 IL App (1st) 170026, ¶ 33. If the employer meets that burden, the petitioner must prove by a preponderance of the evidence that the employer's stated reason was pretext for unlawful discrimination. *Id.* Pretext is "a phony reason" and "involves more than just faulty reasoning or mistaken judgment." (Internal quotation marks omitted.) *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 55.

¶ 27    Here, the Commission concluded that petitioner failed to establish a *prima facie* case of disability discrimination as he failed to prove that his prostate cancer was a disability. We conclude that the Commission did not abuse its discretion in sustaining the Department's dismissal on that basis. Under the Act, a disability includes a "determinable physical or mental characteristic, *** the history of such characteristic, or the perception of such characteristic," which "is unrelated to

the person's ability to perform the duties of a particular job or position." 775 ILCS 5/1-103(I)(1)(a) (West Supp. 2019). A condition is not a disability if it is "transitory and insubstantial" or "not significantly debilitating or disfiguring." *Kreczko*, 2016 IL App (1st) 151762, ¶ 38.

¶ 28    Petitioner notes that cancer has been considered a disability under the Act. See *Lake Point Tower, Ltd. v. Illinois Human Rights Comm'n*, 291 Ill. App. 3d 897, 905 (1997). However, according to the investigation report, his "Verification of Disability" form indicated that his own cancer was minor and impermanent. Given that evidence, we cannot conclude that the Commission's decision was an abuse of discretion. See *Kreczko*, 2016 IL App (1st) 151762, ¶¶ 37-38 (*prima facie* case includes proving petitioner was disabled, which excludes "transitory and insubstantial" conditions).

¶ 29    This is especially true considering that the Verification of Disability form is not included in the record on appeal. The Department listed the form among the exhibits the investigator considered but no exhibits are included in the record on appeal. See Ill. S. Ct. R. 335(d), (e) (eff. July 1, 2017) (although, on direct review of administrative proceedings, the agency is to file the record on appeal, any "[o]mitted portions shall be transmitted to the Appellate Court at any time on the request of the agency, the petitioner or any other party"); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (appellant bears burden of providing a sufficient record on appeal to support claim of error, doubts arising from incomplete record will be resolved against the appellant, and when record is insufficient we must presume lower court's decision was lawful and had sufficient factual basis); see also *Burns v. Department of Insurance*, 2013 IL App (1st) 122449, ¶ 15 (applying *Foutch* to review of agency decision in administrative proceedings).

¶ 30    Moreover, assuming petitioner established a *prima facie* case of disability discrimination, we would nevertheless find that his claim fails for the same reason that we find the Commission did not abuse its discretion in sustaining the dismissal of his retaliation claim, to which we now turn: that he failed to prove Ozinga's articulated reason for discharging him was pretextual.

¶ 31    To make a *prima facie* showing of retaliation, a petitioner must show (1) he engaged in a protected activity, (2) the employer committed an adverse employment act against him, and (3) there was a causal nexus between the protected activity and the adverse act. *Spencer*, 2021 IL App (1st) 170026, ¶ 40. If the petitioner establishes a *prima facie* case by a preponderance of the evidence, a rebuttable presumption that the employer unlawfully retaliated against him arises. *Thai v. Triumvera 600 Naples Court Condominium Ass'n*, 2020 IL App (1st) 192408, ¶ 43. The employee can establish pretext by demonstrating the articulated reason (1) had no basis in fact; (2) did not actually motivate the decision; or (3) was insufficient to explain the decision. *Spencer*, 2021 IL App (1st) 170026, ¶ 38.

¶ 32    Ozinga asserted that it discharged petitioner for failing to return to work or respond to Ozinga's reasonable requests for information under its employment policies. On appeal, petitioner argues that he "kept Ozinga informed of the status of his medical treatment, including sending [Ozinga] an updated off work note, dated January 22, 2020, which allowed for Ozinga to obtain more information if necessary." We conclude that the Commission did not abuse its discretion in concluding petitioner had not shown that Ozinga's stated reason for discharging him was pretext for discrimination.

¶ 33    As an initial matter, petitioner's brief does not present an argument with citations to the record or relevant law that the stated reason for his discharge was pretext. See Ill. S. Ct. R.

341(h)(7) (eff. Oct. 1, 2020) (argument "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" or is forfeited); *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23 ("A failure to cite relevant authority violates Rule 341 and can cause a party to forfeit consideration of the issue.").

¶ 34    Nor has petitioner included in the record on appeal the "work slip" document he submitted to Ozinga in January 2020, on which he relies to argue that he provided Ozinga sufficient information about his medical condition. The work slip was listed among the exhibits the investigator considered but, as noted above, no exhibits are included in the record on appeal. See Ill. S. Ct. R. 335(d), (e) (eff. July 1, 2017). We therefore presume the Commission's decision was in conformity with the law and had a sufficient factual basis. *Foutch* 99 Ill. 2d at 391-92; *Burns* 2013 IL App (1st) 122449, ¶ 15.

¶ 35    Even setting those concerns aside (see *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (we may entertain appeal despite insufficient brief where we understand the issue and other party filed a cogent brief)), petitioner has not proven that Ozinga's stated reason for discharging him was pretext for discrimination.

¶ 36    This court has reviewed the Commission's factual determination that an employer's stated reason was not pretextual under the manifest weight of the evidence standard. See *Spencer*, 2021 IL App (1st) 170026, ¶¶ 33, 38. However, the Commission and Department assert that, because an agency's order sustaining a dismissal for lack of substantial evidence is not quasi-judicial, the abuse of discretion standard applies. See *Pence v. Illinois Human Rights Comm'n*, 2020 IL App (3d) 190384, ¶ 27; *Graves v. Chief Legal Counsel of Illinois Department of Human Rights*, 327 Ill. App. 3d 293, 295-96 (2002). Petitioner does not state which standard of review he believes we

should apply. See Ill. S. Ct. R. 341(h)(3) (eff. Oct. 1, 2020) ("[t]he appellant must include a concise statement of the applicable standard of review for each issue"). Nevertheless, under either standard, we find the Commission properly found that petitioner did not establish Meyers's stated reason for discharging him was pretext.

¶ 37 The record shows that Ozinga's Attendance Discipline Policy and Collective Bargaining Agreement provide for discharge after three unexcused "call-offs" or five days' consecutive absence without reasonable cause, respectively. Ozinga's Progressive Discipline Policy provides that immediate and severe discipline will be applied when required by an employee's flagrant or disruptive conduct. Ozinga's FMLA Policy requires an employee on medical leave to certify that the absence is due to his medical condition. Findlay repeatedly requested information from petitioner to substantiate that his absence was due to his medical condition. When petitioner did not provide the information despite her numerous requests, Findlay informed him he could be discharged if he did not meet with her on March 2, 2020, to return to work or provide documentation that he still could not work. Petitioner did not meet with Findlay or provide documentation that he still could not work. Meyers then informed petitioner that his discharge was warranted given his unauthorized absences since March 2, 2020, and insubordination in failing to appear that day. However, to avoid negatively affecting petitioner's future work opportunities, Ozinga, via Meyers, considered petitioner to have voluntarily resigned effective March 17, 2020.

¶ 38 Petitioner has not established that Ozinga's stated reason for his termination—his failure to certify that his absences were due to his medical condition or meet with Findlay in March 2020, and resulting unauthorized absences—had no basis in fact, was not the actual reason for termination of his employment, or was insufficient explanation for that termination. See *Spencer*,

2021 IL App (1st) 170026, ¶ 38 (employee can show pretext by demonstrating articulated reason had no basis in fact, did not actually motivate adverse employment action, or was insufficient to explain action). Although petitioner's wife sent Findlay a document in January 2020 indicating that petitioner's return to work date was still to be determined, he did not meet with Findlay on March 2, 2020, to return to work or provide documentation he still could not work, as directed. As petitioner did not certify his absences from, at a minimum, March 2, 2020, to March 17, 2020, were due to his medical condition, his discharge accorded with Ozinga's Collective Bargaining Agreement for consecutive absences without reasonable cause. The investigator found no evidence of another employee treated more favorably under similar circumstances or proof that Ozinga's real motive for discharging petitioner was his cancer or discrimination charges he had filed against Ozinga.

¶ 39    Thus, even if petitioner established *prima facie* cases of disability discrimination and retaliatory discharge, he has not shown that Ozinga's stated reason for discharging him was pretext for discrimination or retaliation. Accordingly, the Commission did not abuse its discretion sustaining the Department's dismissal of his charge for lack of substantial evidence.

¶ 40    For the foregoing reasons, we affirm the decision of the Commission.

¶ 41    Commission decision affirmed.