2026 IL App (1st) 250520-U
Order filed: February 18, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DISTRICT
THIRD DIVISION

No. 1-25-0520

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| CHRISTOPHER DANGLES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2023 L 009168 |
| | ) | |
| THOMAS J. DART, SHERIFF OF COOK | ) | |
| COUNTY, ILLINOIS, in his official capacity, | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the grant of summary judgment in favor of defendant on plaintiff's claim
of disability discrimination.

¶ 2    Plaintiff, Christopher Dangles, filed an employment discrimination charge with the Illinois

Department of Human Rights (IDHR) against his former employer, Thomas Dart, the Sheriff of

Cook County (defendant). Plaintiff alleged that he suffered from a disability, multiple sclerosis

(MS), for which he has a prescription for medical marijuana. Plaintiff made defendant aware of

his disability, yet defendant terminated his employment after he tested positive for marijuana

during a mandatory drug screening. Defendant subsequently reinstated plaintiff subject to his

signing an agreement containing a number of conditions, including that he serve a 29-day

suspension and undergo random drug testing. Defendant terminated plaintiff again when he refused to sign the agreement. Plaintiff alleged that his termination constituted disability discrimination under the Illinois Human Rights Act (IHRA) (775 ILCS 5/2-101 *et seq.* (West 2022)) because he was treated differently than a fellow employee who was not disabled, and who was only suspended for marijuana use and not terminated. The IDHR issued plaintiff a right-to-sue letter, informing him that it had dismissed the charge and that he had 90 days within which to file a complaint in the circuit court. Plaintiff timely filed his complaint for disability discrimination in the circuit court, which granted summary judgment in favor of defendant. Plaintiff now appeals the summary judgment order. We affirm.

¶ 3     Plaintiff worked for defendant as a deputy sheriff and police officer from 2003 to 2018. In or about October 2018, plaintiff was diagnosed with MS, a chronic neurological condition causing significant pain, numbness, and mobility issues and he informed defendant about the diagnosis. Plaintiff was prescribed medical marijuana in January 2019 to control his symptoms.  In or about September 2020, defendant reassigned plaintiff to a civilian administrative assistant position, which primarily involved desk work requiring him to take calls from persons on electronic monitoring, process requests for movement authorizations, and manage documents. There is no evidence in the record that plaintiff's medical marijuana use interfered with his job performance as an administrative assistant. Plaintiff does not claim he sought accommodation for his disability under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.* (1994)), nor did he seek an accommodation for his medical marijuana use.

¶ 4     As part of plaintiff's reassignment to the civilian administrative assistant position, he became subject to defendant's drug testing policies. The relevant policy, Policy 110.3, prohibits members of the Sheriff's Office from "[h]aving the presence of drugs or controlled substances (or

their metabolites) in their system" and "[h]aving the presence of cannabis in their system" either while on-duty or off-duty.

¶ 5    On September 14, 2020, plaintiff tested positive for marijuana metabolite during a mandatory drug screening. The Office of Professional Review (OPR) investigated the matter and defendant terminated plaintiff's employment in May 2021. Plaintiff petitioned for reconsideration of the termination decision. On June 1, 2021, plaintiff was conditionally reinstated after he initialed and signed Procedure Form 105.4, which stated:

> "CONDITIONS OF REINSTATEMENT
>
> If the Chief of Staff grants the affected member's petition, the member shall be reinstated with the Sheriff's Office after passing a drug screening test and agreeing in writing to a Last Chance Agreement that is prepared by the Sheriff's Office Legal Department. HR will monitor compliance of the Last Chance Agreement in collaboration with the respective department head. The Last Chance Agreement should include, but is not limited to, all of the following conditions listed below. The member shall:
>
> (a) Admit to misusing drugs and take full responsibility for their actions leading up to the violation that caused the member's initial termination.
>
> (b) Cease the use of illegal drugs, the misuse of prescription or OTC drugs, or any combination thereof.
>
> (c) Receive a minimum suspension of 29 days.
>
> (d) Submit to and bear the expense of at least 12 random drug tests over a 24-month period from the date of conditional reinstatement.
>
> 1. Any subsequent failure to pass a drug screening test will result in the member's immediate termination.

(e) Participate in an authorized employee assistance program and successfully complete all recommended services/programs, as required by the provider.

(f) Provide medical documentation from their physician to ensure that any prescribed medication will not interfere with the member's work duties. In addition, continually provide updated documentation for any prescription changes throughout the duration of the Last Chance Agreement.

(g) Comply with all return to work procedures.

(h) Not seek to recover lost wages, seniority, service time or other benefits for the period between termination and reinstatement. This applies regardless of any delay (for any reason) by the Sheriff's Office.

Failure to fully comply with all of the conditions set forth in the Last Chance Agreement will result in the immediate termination of the affected civilian member."

¶ 6 Plaintiff returned to work while the Last Chance Agreement was negotiated between his union and defendant. Peter Kramer, defendant's special counsel for labor affairs, testified in his deposition that he negotiated the Last Chance Agreement with plaintiff's union representatives.

¶ 7 While negotiations were ongoing, plaintiff contracted COVID in November 2021 and was off work from November 26 through December 18. Upon his return, plaintiff was drug tested in December 2021 and again tested positive for marijuana and marijuana metabolite.

¶ 8 On March 7, 2022, plaintiff's union representative e-mailed him the Last Chance Agreement that had been negotiated between the union and Kramer. The Last Chance Agreement set forth how plaintiff had been terminated for violating Policy 110.3 by testing positive for marijuana metabolite and that he had filed a petition for reconsideration of his termination. The Last Chance Agreement further stated that it was a "full, final and complete settlement of each of

these matters" and it provided a number of conditions consistent with Procedure Form 105.4 which he was required to complete. Such conditions included that he must cease using marijuana, submit to 12 random drug tests over a 24-month period, and serve a 29-day suspension. However, plaintiff refused to sign the Last Chance Agreement, despite being informed by his union representative that his failure to sign would lead to his termination. On August 24, 2022, defendant terminated plaintiff's employment.

¶ 9     Plaintiff filed an employment discrimination charge with the IDHR. Plaintiff alleged that his termination constituted unlawful disability discrimination under the IHRA where he was treated differently than another employee, Theresa Olson, the director of human resources in inmate services, who was not disabled and who was only suspended for 29 days (not terminated) after admitting to marijuana use. The IDHR dismissed the charge and issued a right-to-sue letter, after which plaintiff filed a timely complaint for disability discrimination against defendant in the circuit court. The parties filed cross motions for summary judgment. The court granted defendant's motion for summary judgment and denied plaintiff's motion. Plaintiff appeals.

¶ 10     Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the non-movant, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. Review is *de novo*. *Id.* ¶ 30. When, as here, the parties file cross motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Id.* ¶ 28. However, the mere filing of cross motions for summary judgment does not establish that no issue of material fact exists, nor does it obligate the court to render summary judgment. *Id.*

¶ 11 A plaintiff alleging disability discrimination under the IHRA must first establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Kreczko v. Triangle Package Machinery Co.*, 2016 IL App (1st) 151762, ¶ 36. To establish a *prima facie* case of disability discrimination under the IHRA, plaintiff must prove: (1) he was disabled within the definition of the Act; (2) his disability is unrelated to his ability to perform the functions of the job he was hired to perform; and (3) an adverse job action was taken against him related to his disability. *Id.* ¶ 37. Under the IHRA, "disability" is defined as a "determinable physical or mental characteristic of a person *** which may result from disease, injury, congenital condition of birth or functional disorder and *** is unrelated to the person's ability to perform the duties of a particular job or position." 775 ILCS 5/1-103(I)(1)(a) (West 2022). Plaintiff must be able to perform the duties of the job in question; he is not considered disabled under the IHRA if his physical condition prevents him from performing his job duties even with accommodation. *Fox v. Adams and Associates, Inc.*, 2020 IL App (1st) 182470, ¶ 43.

¶ 12 Once plaintiff makes his *prima facie* case, a rebuttable presumption arises that the employer unlawfully discriminated against him. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 179 (1989). To rebut the presumption, the employer must articulate a legitimate, nondiscriminatory reason for its termination decision. *Kreczko*, 2016 IL App (1st) 151762, ¶ 36. If the employer articulates a legitimate reason, plaintiff then must prove that the reason was merely a pretext for unlawful discrimination. *Id.*

¶ 13 First, we address whether plaintiff established a *prima facie* case of disability discrimination. As discussed, plaintiff must show he was disabled under the IHRA, meaning that he possesses a "determinable physical or mental characteristic" resulting from a "disease, injury, congenital condition of birth or functional disorder" but which does not prevent him from

performing his job duties. 775 ILCS 5/1-103(I)(1) (West 2022). Plaintiff testified to his diagnosis of MS, with its resultant pain, numbness, and mobility issues, and to his ability to perform the essential job functions of his position. Plaintiff's testimony shows that he was disabled under the IHRA; defendant does not dispute plaintiff's disability.

¶ 14    Next, plaintiff must show that defendant took an adverse employment action against him for reasons related to his disability. Plaintiff was terminated from his employment. Termination is an adverse employment action. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 919 (2010).

¶ 15    Defendant argues, though, that plaintiff failed to make a *prima facie* case of disability discrimination because he did not show that his termination was because of his MS. While some cases have held that the plaintiff must show that his termination was "because of" his disability (see *e.g.*, *Fox*, 2020 IL App (1st) 182470, ¶ 43) other cases have more broadly held that plaintiff must show only that his termination was for reasons "related to" his disability. See *Kreczko*, 2016 IL App (1st) 151762, ¶ 37. The circuit court here applied the broader "related to" standard. The court noted that plaintiff was prescribed marijuana to treat the symptoms of his MS, which resulted in his positive drug tests leading to his termination. Therefore, the court found that plaintiff had at least arguably made a *prima facie* case that his termination was for reasons related to his disability.

¶ 16    However, even *if* plaintiff made a *prima facie* case by presenting evidence that his termination was for reasons related to his MS, thereby creating a rebuttable presumption of unlawful discrimination, defendant has rebutted the presumption by articulating a legitimate, nondiscriminatory reason for the termination. Defendant contends that it terminated plaintiff in May 2021 for violating its zero-tolerance drug policy as set forth in Policy 110, which applies to *all* of the members of its office and states in pertinent part:

"110.2  POLICY

"It is the policy of the Cook County Sheriff's Office to provide a drug-and alcohol-free workplace for all members.

It is imperative that all Sheriff's Office members are capable of devoting constant and uninterrupted attention to the performance of all assigned duties without risk to safety and security for themselves, other members or the public. To ensure the goals of this policy are met, all Sheriff's Office members shall be subject to drug and alcohol testing, whether mandatory, random or based on reasonable suspicion, as provided by this policy. ***

110.3  GENERAL GUIDELINES

Drug and alcohol use in the workplace or on Sheriff's Office time can endanger the health and safety of Sheriff's Office members and the public. Such use shall not be tolerated ***.

Members are prohibited, while on-or off-duty, unless acting in an official capacity as a  result of an official assignment (*e.g.*, undercover roles) from:

(a) Having unlawful involvement with drugs or controlled substances;

(b) Having the presence of drugs or controlled substances (or their metabolites) in their system;

(c) Having the presence of cannabis in their system ***."

¶ 17    Defendant has successfully rebutted the presumption of discrimination surrounding its initial termination of plaintiff in May 2021, by showing that the termination was for violating its zero-tolerance drug policy which is applicable to *all* members of its office and that it did not single him out for termination for any disability-based reason applicable only to him. Defendant also has successfully rebutted the presumption of discrimination surrounding its second termination of

plaintiff in August 2022, by showing that it was the result of his refusal to sign the Last Chance Agreement and abide by the conditions set forth therein, including the 29-day suspension, and not the result of any discrimination based on his disability.

¶ 18    Plaintiff argues, though, that defendant's stated reason for terminating him was a pretext for unlawful discrimination. To prove pretext, plaintiff must show that defendant's articulated reason has no basis in fact, did not actually motivate its decision to terminate him, or was insufficient to motivate its decision. *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 537 (2000).

¶ 19    Plaintiff contends that defendant's stated reason that it initially terminated him for violating the zero-tolerance drug policy and terminated him a second time for refusing to sign the Last Chance Agreement was pretextual because when it was faced with a non-disabled employee, Theresa Olson, who violated the same policy, it merely suspended her for 29 days and then allowed her to resume work. Plaintiff argues that the only pertinent difference between himself and Olson is that he is disabled and she is not, and therefore that the decision to impose the more severe discipline of termination against him was for reasons related to his disability and that any stated reasons to the contrary were pretextual. Plaintiff's argument fails because the record shows that after his initial termination, he was conditionally reinstated subject to his signing a Last Chance Agreement providing a number of conditions that must be met including the *same* 29-day suspension offered to Olson. Plaintiff's conditional reinstatement was revoked and he was terminated again only after he *refused* to sign the agreement, satisfy the conditions, and serve the suspension. Plaintiff cannot now argue that defendant discriminated against him compared with Olson by suspending her for 29 days for violating the zero-tolerance drug policy while terminating him for the same violation, where he was offered the same 29-day suspension as Olson upon his

conditional reinstatement, which he refused. Ultimately, plaintiff's termination was the result of his decision not to sign the Last Chance Agreement, satisfy its conditions, and serve the 29-day suspension for violating the zero-tolerance drug policy; it was not the result of any discrimination based on his disability.

¶ 20    Plaintiff argues that comparability determinations, such as whether he was discriminated against as compared to Olson, are typically questions for the fact-finder and should not have been resolved on summary judgment. Initially, we note that the parties here filed cross motions for summary judgment, thereby indicating their agreement that there were *no* questions of material fact. *Pielet*, 2012 IL 112064, ¶ 28. Further, we have held that although it is usually a question for the trier of fact as to whether a comparator is similarly situated to the plaintiff, summary judgment may be entered when no reasonable fact-finder could find that plaintiff met his burden of showing that he was treated differently than the similarly situated comparator. *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 46. In the present case, for all the reasons stated earlier in this order, no reasonable trier of fact could find that plaintiff met his burden of showing that he was singled out and treated differently than Olson based on his disability; there were no questions of material fact on the issue precluding the grant of summary judgment.

¶ 21    Next, plaintiff argues that the circuit court violated Illinois Rule of Evidence 408 (Ill. R. Evid. 408 (eff. Jan. 1, 2011)) by "considering settlement evidence, including negotiations regarding [his] first drug test, the signing of Procedure Form 105, and last chance agreement discussions." Such negotiations and discussions took place between plaintiff, his union, and Kramer and culminated in the Last Chance Agreement, which plaintiff refused to sign.

¶ 22    Rule 408 states:

"**(a) Prohibited Uses.** Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

(1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or statements made in compromise negotiations regarding the claim.

**(b) Permitted Uses.** This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of settlement negotiations. This rule also does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness' bias or prejudice; negating an assertion of undue delay; establishing bad faith; and proving an effort to obstruct a criminal investigation or prosecution." *Id.*

¶ 23 By its express terms, Rule 408(a) only precludes evidence of settlement negotiations regarding a claim that is in dispute as to its validity or amount. Plaintiff's claim is that defendant unlawfully engaged in disability discrimination under the IHRA when it initially terminated him for testing positive for marijuana which had been prescribed to help alleviate his MS symptoms and terminated him a second time for refusing to sign the Last Chance Agreement. Defendant disputes plaintiff's claim that it discriminated against him based on his disability. Plaintiff argues that under Rule 408(a), any negotiations between his union and Kramer aimed at settling his disputed discrimination claim were inadmissible to prove the validity or invalidity of his claim.

¶ 24 However, it is not at all clear from the parties' briefs or the record on appeal whether, at the time of those discussions/negotiations, plaintiff was threatening litigation under the IHRA or

arguing that his termination was the result of disability discrimination. The best that we can discern from the record is that the negotiations between Kramer and the union surrounding plaintiff's drug test, procedure form, and Last Chance Agreement *predated* plaintiff's discrimination claim and were an attempt to give him, as the agreement states, a "last chance" to save his job. As the appellant, plaintiff bears the burden under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) to cite the pages of the record showing that those negotiations were also an attempt to settle his discrimination claim and, thus, that evidence of such negotiations was inadmissible under Rule 408(a). Plaintiff cites his e-mail exchanges with his union representative and portions of Kramer's deposition testimony discussing the negotiations with the union, and he also cites the language in the Last Chance Agreement describing it as a "full, final and complete settlement" of certain listed matters surrounding his termination and his petition for reconsideration. However, none of the e-mail exchanges or deposition testimony cited to us, nor the Last Chance Agreement itself, specifically discuss whether plaintiff was asserting a disability discrimination claim at the time of those negotiations between Kramer and the union and thus it is unclear whether the parties' negotiations and agreement were meant to settle such a claim and foreclose the present litigation. By failing to cite to the portions of the record supporting his argument that the parties entered into settlement negotiations over his discrimination claim, plaintiff has forfeited review of whether the evidence of such negotiations was inadmissible under Rule 408(a). *Id.*

¶ 25    Even if the issue had not been forfeited, we still would affirm the circuit court. Plaintiff claims he was discriminated against when defendant terminated him after he refused to sign the negotiated Last Chance Agreement. To consider plaintiff's discrimination claim, the court necessarily needs to consider the Last Chance Agreement and the negotiations leading up to it so as to understand the factual context underlying defendant's termination decision. Rule 408(b) does

not require exclusion of evidence where it is offered for purposes not prohibited by subdivision (a). As the evidence of the Last Chance Agreement and the negotiations leading up to it are offered to show the factual context for defendant's termination decision, which is a purpose not expressly prohibited by subdivision (a) of Rule 408, it is admissible under subdivision (b) and therefore the court's consideration of such evidence did not constitute reversible error.

¶ 26　Plaintiff also argues that the circuit court factually erred when it stated in the summary judgment order that Olson "was put on a Last Chance Agreement." Although the parties agree that Olson was offered a 29-day suspension for her drug violation, there is no evidence in the record that she formally signed a Last Chance Agreement. The court's factual error does not compel reversal of the summary judgment order, though, because our review of the summary judgment order is *de novo*, meaning that we conduct an independent analysis without deference to the circuit court's judgment or reasoning. *Davis v. Pace Suburban Bus Division of the Regional Transportation Authority*, 2021 IL App (1st) 200519, ¶ 33. After our *de novo* review, we have determined for all the reasons stated herein that defendant successfully rebutted plaintiff's *prima facie* case of discrimination by articulating a legitimate, nondiscriminatory reason for his termination that was not pretextual.  See also *Lewis v. Kalbhen*, 2025 IL App (1st) 242110, ¶ 45 (when conducting *de novo* review of a summary judgment order, we may affirm the circuit court's judgment on any basis in the record, regardless of whether the court relied on that basis or its reasoning was correct).

¶ 27　Before concluding, we note that defendant argues that its zero-tolerance drug policy was in accordance with the federal Drug-Free Workplace Act of 1988 (41 U.S.C. § 8101 *et seq*. (2022)) and the Illinois Drug Free Workplace Act (30 ILCS 580/1 *et seq*. (West 2022)) and the Compassionate Use of Medical Cannabis Program Act (410 ILCS 130/1 *et seq*. (West 2022)) as

well as the IHRA. We need not discuss this argument, because plaintiff does not dispute that the zero-tolerance drug policy was in accordance with federal and state law; rather, his argument is that the policy was discriminatorily applied to him because of his disability. For all the reasons discussed in this order, plaintiff's argument that the policy was discriminatorily applied to him fails.

¶ 28    Affirmed.